**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**Desmond Demetrius Clark,**
**Petitioner Below, Petitioner**

**vs.)**     No. 21-0465 (Kanawha County 21-P-74)

**Donnie Ames, Superintendent,**
**Mt. Olive Correctional Complex,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Self-represented petitioner Desmond Demetrius Clark appeals the May 7, 2021, order of the Circuit Court of Kanawha County denying his third petition for a writ of habeas corpus. Respondent Donnie Ames, Superintendent, Mt. Olive Correctional Complex, by counsel Patrick Morrisey and Katherine M. Smith, filed a response in support of the circuit court's order. Petitioner filed a reply.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The victim in this case was the mother of petitioner's child. Petitioner was indicted in the Circuit Court of Kanawha County for breaking and entering, kidnapping, and murder based upon events surrounding the victim's murder at a Taco Bell restaurant in Charleston, West Virginia, on July 5, 2008. Prior to petitioner and the victim reaching the Taco Bell, petitioner chased the victim, fired two shots at her, but missed. Petitioner caught the victim, slung her over his shoulder, and carried her back to a SUV where he forced her inside and drove away. The victim subsequently jumped out of the SUV and fled into the Taco Bell. Video surveillance in the restaurant captured petitioner entering the restaurant and leaping over the counter. Petitioner located the victim inside the restaurant and shot her six times before leaving the restaurant and driving away. Various witnesses identified petitioner, including a mechanic who knew him, workers at the Taco Bell, and

1

one witness who saw him at both the scene of the kidnapping and the murder. No witness reported any impairment of petitioner's condition.

Petitioner met with his psychiatric expert, Dr. Bobby Miller, five days after the victim's murder. Prior to trial, petitioner disclosed Dr. Miller as an expert witness who would offer testimony as to the general effects of Xanax and alcohol use, but give no particularized opinion regarding petitioner. Petitioner also moved for a continuance of his trial to obtain additional mental health records to be reviewed by Dr. Miller, arguing that the additional records might lead to a diminished capacity defense.[1] However, the circuit court determined that the only missing mental health records were located in Wisconsin and dated from when petitioner was nine-years-old.[2] Accordingly, the circuit court denied petitioner's motion for a continuance.

Thereafter, petitioner and the State entered into a plea agreement which provided that he would plead guilty to first-degree murder in exchange for the dismissal of the remaining charges. At the March 30, 2009, plea hearing, the circuit court engaged in a colloquy with petitioner. The circuit court inquired if petitioner had a mental health defense. While petitioner had been diagnosed with intermittent explosive disorder,[3] he advised the circuit court that he chose not to pursue a mental health defense and wanted to accept responsibility for his crime. Petitioner further indicated that he understood the plea agreement and that no one promised him anything or threatened him to induce him to plead guilty. Petitioner confirmed that he understood the charge to which he was pleading guilty, that he could spend the rest of his life in prison, and that the State did not agree to any recommendation regarding sentencing. The circuit court inquired if petitioner understood that the court had the option whether to grant mercy, and he responded that he understood. Accordingly, the circuit court accepted petitioner's guilty plea to first-degree murder.

Following the preparation of a presentence investigation report, the circuit court held petitioner's sentencing hearing in July of 2009. Petitioner presented Dr. Miller's testimony in mitigation of punishment. Dr. Miller testified that, when he evaluated petitioner five days after the murder, he believed petitioner to be competent. Dr. Miller opined that petitioner knew what he was doing at the time of the crime and was capable of conforming his behavior to the requirements of the law. While petitioner's self-reported consumption of Xanax and alcohol would have lessened petitioner's control of his violent impulses, petitioner failed to resist those impulses. Dr. Miller did not testify that petitioner's consumption of Xanax and alcohol would have affected his capacity to

---

[1]Diminished capacity constitutes a partial defense in that it allows a defendant to introduce "expert testimony regarding a mental disease or defect that rendered the defendant incapable, at the time the crime was committed, of forming a mental state that is an element of the crime charged," but "does not preclude a conviction for a lesser included offense." Syl. Pt. 3, *State v. Joseph*, 214 W. Va. 525, 590 S.E.2d 718 (2003).

[2]Petitioner was twenty-two years old when he entered his guilty plea in 2009.

[3]Petitioner was diagnosed with intermittent explosive disorder prior to 2008.

2

form a specific intent to kill or to premeditate or deliberate prior to shooting the victim.[4] The circuit court sentenced petitioner to a life term of incarceration without the possibility of parole. Petitioner did not file an appeal challenging his conviction or sentence in his criminal case.

Subsequently, petitioner privately retained his first habeas counsel who discussed with him the possibility of seeking a resentencing in his criminal case so that he could file an appeal. Because petitioner wanted to allege that trial counsel provided ineffective assistance in the criminal case, petitioner chose to file a petition for a writ of habeas corpus.

Petitioner filed his first petition for a writ of habeas corpus in 2011, alleging that trial counsel failed to investigate mental health defenses and to offer mitigating evidence of Xanax and alcohol use at the time of the offense. The circuit court held an omnibus evidentiary hearing on March 9, 2012, at which both petitioner and his mother testified that trial counsel advised them that the plea agreement was strategically the best course because it was counsel's calculated guess that petitioner would receive mercy. However, petitioner and his mother acknowledged that counsel did not make any guarantees that the circuit court would sentence petitioner to a life term of incarceration with the possibility of parole. Thereafter, the circuit court, by order entered on April 12, 2012, denied petitioner's first habeas petition.

Petitioner appealed the circuit court's denial of his first habeas petition in *Clark v. Ballard* ("*Clark I*"), No. 12-0524, 2013 WL 2462188 (W. Va. Jun. 7, 2013) (memorandum decision). This Court in *Clark I* affirmed the denial of petitioner's first habeas petition, finding that the record refuted his allegations that trial counsel failed to investigate mental health defenses and to offer mitigating evidence of Xanax and alcohol use at the time of the offense. *Id.* at *2. We further adopted "the circuit court's well-reasoned findings and conclusions as to the assignments of error raised in this appeal." *Id.* Accordingly, we further found that,

> after having been reasonably advised by his [trial] counsel, and having been questioned by the [circuit court] at the time of his plea, it was . . . [p]etitioner's knowing, voluntary, [and] intelligent decision to enter his plea and to not pursue a hypothetical claim of diminished capacity. The . . . decision constituted a knowing *waiver*, evident from the [circuit court]'s colloquy with counsel and . . . [p]etitioner at the time of the plea of guilty.

*Id.* at *6 (Emphasis in original.).

Petitioner filed a second habeas petition in the circuit court in May of 2016. Second habeas counsel was appointed to represent petitioner and subsequently filed an amended petition. In the amended petition, petitioner alleged the following: (1) ineffective assistance of habeas counsel; (2) ineffective assistance of trial counsel; (3) prejudicial pre-trial publicity; (4) involuntary guilty

---

[4]Voluntary intoxication constitutes a partial defense by negating the specific intent to kill or negating the premeditation and deliberation that is required for a conviction of first-degree murder. *State v. Brant*, 162 W. Va. 762, 766, 252 S.E.2d 901, 903 (1979).

3

plea; (5) petitioner's competence and criminal responsibility, or lack thereof; (6) trial counsel's failure to appeal petitioner's sentence; (7) the State's use of perjured testimony; (8) the circuit court's failure to grant a continuance; (9) the failure to subpoena witnesses; (10) a question of actual guilt upon an acceptable guilty plea; (11) a more severe sentence than expected; and (12) mistaken advice as to eligibility for probation or parole.

The circuit court held an evidentiary hearing in the second habeas proceeding on August 28, 2017. Petitioner presented several witnesses. The testimony of trial counsel, petitioner's mother, and Mark Pearson (petitioner's friend) was very limited because the circuit court ruled that, due to the omnibus evidentiary hearing in petitioner's first habeas proceeding, the only issue before it was whether first habeas counsel provided effective assistance in that proceeding.

Petitioner's first habeas counsel testified about his discussion with petitioner about making the choice to file a habeas petition rather than seeking a resentencing in order to file a criminal appeal. First habeas counsel testified that he discussed every potential ground in the *Losh* list with petitioner and informed him that any issue he did not raise would be forever waived.[5] According to first habeas counsel, he raised the two issues in petitioner's first habeas petition as a matter of strategy, given that all of the other plausible issues were waived by the entry of petitioner's guilty plea. Next, petitioner's criminal law expert testified that he understood first habeas counsel's strategy in the first habeas proceeding, but stated that he disagreed with it in petitioner's case. During petitioner's testimony, he acknowledged that first habeas counsel reviewed the *Losh* list with him, that he signed the *Losh* list, and that all of the issues not raised therein were waived. Thereafter, the circuit court, by order entered on February 9, 2018, denied petitioner's second habeas petition.

Petitioner appealed the circuit court's denial of his second habeas petition in *Clark v. Ames* ("*Clark II*"), No. 18-0133, 2019 WL 1591878 (W. Va. Apr. 15, 2019) (memorandum decision).[6] This Court in *Clark II* initially rejected petitioner's assignment of error that the circuit court improperly limited the testimony of several of his witnesses due to its finding that the only issue before it was whether first habeas counsel provided effective assistance in the earlier proceeding. *Id.* at *3-4. The *Clark II* Court found that petitioner's argument that he should have been allowed to raise other issues in addition to ineffective assistance of first habeas counsel was contrary to Syllabus Point 4 of *Losh v. McKenzie*, 166 W. Va. 762, 277 S.E.2d 606 (1981). *Id.* The *Clark II* Court also rejected petitioner's other assignment of error, that first habeas counsel provided

---

[5]The checklist of grounds typically used in habeas corpus proceedings, usually referred to as the *Losh* list, originates from our decision in *Losh v. McKenzie*, 166 W. Va. 762, 277 S.E.2d 606 (1981), wherein we set forth the most common grounds for habeas relief. *See id.* at 768-70, 277 S.E.2d at 611-12.

[6]We take judicial notice of the record in *Clark v. Ames* ("*Clark II*"), No. 18-0133, 2019 WL 1591878 (W. Va. Apr. 15, 2019) (memorandum decision).

ineffective assistance, and concurred with the circuit court's finding that "petitioner was not entitled to habeas relief on this ground." *Id.* at *5.

On March 11, 2021, petitioner filed the instant (third) habeas petition, alleging that (1) both his first and second habeas counsels failed to investigate the record and raise viable grounds for relief;[7] (2) second habeas counsel failed to fully brief and present evidence regarding all of the issues raised in the amended petition in petitioner's second habeas proceeding; (3) second habeas counsel failed to fully brief issues on appeal in *Clark II*; and (4) newly discovered evidence showed that petitioner was impaired at the time that he killed the victim. The circuit court, by order entered on May 7, 2021, rejected petitioner's grounds for relief and denied the instant habeas petition.

Petitioner now appeals the circuit court's June 15, 2021, order denying the instant habeas petition. We review a circuit court's order denying a habeas petition under the following standards:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syl. Pt. 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).
>
> . . . .
>
> "'A court having jurisdiction over habeas corpus proceedings may deny a petition for a writ of habeas corpus without a hearing and without appointing counsel for the petitioner if the petition, exhibits, affidavits or other documentary evidence filed therewith show to such court's satisfaction that the petitioner is entitled to no relief.' Syllabus Point 1, *Perdue v. Coiner*, 156 W.Va. 467, 194

---

[7] The first ground for relief in petitioner's instant habeas petition has six subparts. Specifically, petitioner alleged that his first and second habeas counsels failed to allege that (1) the circuit court accepted petitioner's guilty plea after an inadequate plea colloquy; (2) trial counsel advised petitioner to plead guilty to first-degree murder before completing the investigation regarding petitioner's intermittent explosive disorder; (3) trial counsel failed to inform petitioner that he could plea guilty and seek to have a jury decide his eligibility for parole; (4) the circuit court erred in denying petitioner's motion for a continuance in order to obtain additional mental heath records; (5) the circuit court failed to inform petitioner that he could appeal his sentence, and (6) the circuit court failed to order the preparation of a presentence investigation report. With regard to this sixth claim, we agree with respondent that it is based upon an inaccurate factual premise as we stated in *Clark v. Ames* ("*Clark II*"), No. 18-0133, 2019 WL 1591878 (W. Va. Apr. 15, 2019) (memorandum decision), that "a presentence investigation report was completed" following petitioner's guilty plea. *Id.* at *1.

S.E.2d 657 (1973)." Syl. Pt. 2, *White v. Haines*, 215 W.Va. 698, 601 S.E.2d 18 (2004).

Syl. Pts. 1 and 3, *Anstey v. Ballard*, 237 W. Va. 411, 787 S.E.2d 864 (2016). Because we have before us the denial of petitioner's third habeas petition, we consider the application of Syllabus Point 4 of *Losh*:

> A prior omnibus habeas corpus hearing is *res judicata* as to all matters raised and as to all matters known or which with reasonable diligence could have been known; however, an applicant may still petition the court on the following grounds: ineffective assistance of counsel at the omnibus habeas corpus hearing [and] newly discovered evidence[.]

166 W. Va. at 762-63, 277 S.E.2d at 608. We have further held that "[a] criminal defendant can knowingly and intelligently waive his constitutional rights, and when such knowing and intelligent waiver is conclusively demonstrated on the record, the matter is *res judicata* in subsequent actions in *habeas corpus*." Syl. Pt. 2, *Call v. McKenzie*, 159 W. Va. 191, 220 S.E.2d 665 (1975); *see State v. Greene*, 196 W.Va. 500, 505, 473 S.E.2d 921, 926 (1996) (Cleckley, J., concurring) (stating that, "in the absence of special circumstances, a guilty plea waives all antecedent constitutional and statutory violations save those with jurisdictional consequences") (Footnote omitted.).

On appeal, petitioner argues that the circuit court erred in denying the instant habeas petition without holding a hearing or appointing counsel. Respondent counters that this Court should affirm the denial of habeas relief. We agree with respondent.

We find that petitioner, as he did in *Clark II*, makes arguments contrary to Syllabus Point 4 of *Losh*. Petitioner argues that trial counsel and first habeas counsel were ineffective, but the doctrine of res judicata prevents him from doing so due to the adjudication of those issues in *Clark I* and *II*. This Court in *Clark I* adopted the circuit court's finding that petitioner waived any mental health defense he had and knowingly, voluntarily, and intelligently entered a guilty plea based upon an adequate plea colloquy. 2013 WL 2462188, at *6. As first habeas counsel testified in *Clark II*, by pleading guilty, petitioner waived, pursuant to Syllabus Point 2 of *Call*, the vast majority of issues which he could have plausibly raised in a habeas proceeding. 2019 WL 1591878, at *5. First habeas counsel further testified that he discussed every potential ground in the *Losh* list with petitioner and informed him that any issue that he did not raise would be forever waived. *Id.* at *2. (Footnote omitted.). Our review of the August 28, 2017, hearing transcript confirms that petitioner likewise testified that first habeas counsel reviewed the *Losh* list with him, that he signed the *Losh* list, and that all of the issues not raised therein were waived. Accordingly, while petitioner permissibly raises the ineffective assistance of second habeas counsel pursuant to the exception set forth in Syllabus Point 4 of *Losh*, we find that petitioner cannot show that second habeas counsel was ineffective due to our affirmation of the circuit court's ruling in *Clark II*.

The test for evaluating ineffective assistance of counsel claims is as follows:

> In the West Virginia courts, claims of ineffective assistance of counsel are

6

to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

Syl. Pt. 5, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995). Additionally,

[i]n reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

*Id.* at 6-7, 459 S.E.2d at 117-18, syl. pt. 6.

At the August 28, 2017, hearing, the circuit court limited the evidence second habeas counsel could present, ruling that the only issue before it was whether first habeas counsel provided effective assistance in the earlier proceeding. In *Clark II*, second habeas counsel challenged the circuit court's ruling on appeal, but we rejected that assignment of error because "[p]etitioner's argument ignores our earlier finding in [Syllabus Point 4 of *Losh*]." 2019 WL 1591878, at *3-4. Thus, while petitioner argues that second habeas counsel failed to adequately raise various issues both at the hearing and on appeal in *Clark II*, pursuant to Syllabus Point 4 of *Losh*, the only issue that second habeas counsel was permitted to raise was ineffective assistance of first habeas counsel. We find that second habeas counsel clearly raised that issue both at the hearing and on appeal in *Clark II*. Therefore, pursuant to the *Strickland/Miller* test, we find that second habeas counsel's performance did not fall below an objective standard of reasonableness.

Newly discovered evidence constitutes another exception to the doctrine of res judicata under Syllabus Point 4 of *Losh*. Petitioner argues that newly discovered evidence shows that he was impaired at the time that he killed the victim. Petitioner's newly discovered evidence consists of two affidavits and one e-mail from acquaintances—including an affidavit from Mr. Pearson, whose testimony at the August 28, 2017, hearing was limited due to the circuit court's ruling that was affirmed in *Clark II*—stating that they have information about petitioner's consumption of Xanax and alcohol around the time of the murder. Petitioner further states that there is research regarding the combined effect of Xanax and alcohol on a person's cognitive functioning.

We set forth the test for evaluating newly discovered evidence in the Syllabus of *State v. Frazier*, 162 W. Va. 935, 253 S.E.2d 534 (1979):

"A new trial will not be granted on the ground of newly-discovered evidence unless the case comes within the following rules: (1) The evidence must appear to have been discovered since the trial, and, from the affidavit of the new

7

witness, what such evidence will be, or its absence satisfactorily explained. (2) It must appear from facts stated in his affidavit that plaintiff was diligent in ascertaining and securing his evidence, and that the new evidence is such that due diligence would not have secured it before the verdict. (3) Such evidence must be new and material, and not merely cumulative; and cumulative evidence is additional evidence of the same kind to the same point. (4) The evidence must be such as ought to produce an opposite result at a second trial on the merits. (5) And the new trial will generally be refused when the sole object of the new evidence is to discredit or impeach a witness on the opposite side." Syllabus Point 1, *Halstead v. Horton*, 38 W.Va. 727, 18 S.E. 953 (1894)[, *overruled on other grounds*, *State v. Bragg*, 140 W. Va. 585, 87 S.E.2d 689 (1955)].

In rejecting petitioner's newly discovered evidence claim, the circuit court found that the affidavits and the e-mail would not have changed the result of petitioner's criminal case. Petitioner's consumption of Xanax and alcohol, as well as his intermittent explosive disorder, were known to his psychiatric expert, Dr. Miller, in his criminal case, who opined that petitioner knew what he was doing at the time of the crime and was capable of conforming his behavior to the requirements of the law. According to Dr. Miller's expert opinion, petitioner had no mental health defense. As petitioner testified in the first habeas proceeding, he made a strategic choice to forego a mental health defense and plead guilty based upon the calculation that it gave him the greatest opportunity for a life sentence of incarceration with the possibility of parole. Accordingly, this Court in *Clark I* adopted the circuit court's finding that "[petitioner's] guilty plea was motivated by the overwhelming strength of the State's evidence, the lack of [a] mental [health]/diminished capacity defense, and matters of strategy[.]" 2013 WL 2462188, at *6. Thus, we find that the circuit court properly rejected petitioner's newly discovered evidence claim. Therefore, we conclude that the circuit court did not abuse its discretion in denying petitioner's third petition for a writ of habeas corpus.

For the foregoing reasons, we affirm the circuit court's June 15, 2021, order.

Affirmed.

**ISSUED**: August 30, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn

8